## Commonwealth *v.* Holley, Appellant.

Argued November 25, 1947. Before MAXEY, C. J., LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Edward A. Kelly,* with him *James Conwell Welsh,* for appellant.

*Colbert C. McClain,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 19, 1948:

Grant Holley was indicted and tried for the murder of one Ella Wiggins in the City of Philadelphia. A jury in Court No. 1 returned a verdict of guilty of murder in the first degree and fixed the death penalty. This appeal is from the judgment of the court below dismissing appellant's motion for a new trial and imposing the sentence of death.

Grant Holley, appellant, came to Philadelphia from North Carolina sometime prior to July 5, 1946. Shortly after midnight on July 5, 1946, appellant entered a taproom on the northwest corner of 21st and Norris Streets for the purpose of buying a quart of beer. During the preceding day he had been drinking. The taproom was crowded; Holley went up to the bar where one Earl Kent asked a friend, Albert Rowlings, to buy Kent a drink, whereupon appellant said: "You don't have to

buy him a drink. I'll buy him a drink." A quarrel ensued whereupon someone said: "Kill that nigger." Appellant immediately drew a pistol, pulled up his coat, backed off towards the door, and upon reaching the doorway, fired two shots into the crowded barroom. He then went around the corner to another entrance a few feet distant and fired a third shot through the door. Ella Wiggins was seated in a booth on the east side of the taproom, and the third shot pierced her heart. She died shortly thereafter. Appellant had lived in an apartment in the same house in which the deceased and her sister resided. She had remonstrated with appellant for gambling with one Floyd Hoskins who, on several occasions, had visited him and who was also her friend.

After the shooting appellant disappeared and was a fugitive until September 14, 1946, when he was brought back from Hampton, Virginia. Thereafter he made a statement to the police in which he said on this night he was going around to various taprooms carrying a pistol stuck in his belt; that the crowd in the taproom had threatened him; and, because they said, "Let's kill him" he had pulled the gun out and told one of the men in particular to stop coming towards him, whereupon he started to fire.

The Commonwealth offered, and the lower court admitted over objection, the criminal docket of the Superior Court of Chowan County, North Carolina, and also the criminal docket of the Recorder's Court of Chowan County, North Carolina. These records, duly certified by the clerk of the Superior Court of Chowan County, North Carolina, show that in 1923 appellant was convicted of assault with intent to kill; in 1925 he pleaded guilty to murder in the second degree; in 1935 he was convicted of assault with a deadly weapon with intent to kill; in 1937 he was convicted of assault with a deadly weapon, and in 1942 found guilty of assault with a deadly weapon with intent to kill. Appellant was identified as the party involved in these prior criminal

convictions in North Carolina by George A. Helms, Chief of Police of Edenton, who had participated in several of the trials of this defendant in North Carolina.

Numerous exceptions taken to the charge of the trial judge related to his comments regarding appellant's failure to testify in his own behalf, criticism of counsel for appellant, and distinction between and the elements and proof of first and second degree murder. The jury returned a verdict of guilty of murder in the first degree with penalty of death. The court below dismissed appellant's motion for a new trial and entered a judgment and sentence of death. This appeal followed.

Appellant contends that the trial judge committed prejudicial error in: (1) admitting, over objection, the records showing prior convictions; (2) commenting adversely upon appellant's failure to testify; (3) criticizing the conduct of counsel for appellant; and (4) instructing the jury that "where a firearm is used, a deadly weapon, you see, as it is called in the law, and it is shown that the defendant killed a human being with a firearm, if the ordinary and usual consequence of such an act, namely, the use of a firearm against a human being, would be to take the life of the victim, then the fact finding body, the jury, has a perfect right, I should say almost the duty, legal duty, of saying that there was an intent to take the life."

Evidence of prior convictions of crimes is admissible in homicide cases for the sole purpose of aiding the jury in determining the penalty to be imposed if it finds the accused guilty of murder in the first degree: *Commonwealth v. Clark*, 322 Pa. 321, 185 A. 764; *Commonwealth v. Thompson*, 321 Pa. 327, 184 A. 97; *Commonwealth v. Harris*, 314 Pa. 81, 171 A. 279; *Commonwealth v. Williams*, 307 Pa. 134, 160 A. 602. The records complained of were certified records of a foreign jurisdiction. The accused's identity as the defendant therein was established by a police officer familiar with the trials resulting in these prior convictions. The jury was carefully

instructed as regards the purpose of their admission in evidence. The trial judge did not err in this regard. In *Commonwealth v. John Jones,* 355 Pa. 594, 50 A. 2d 342, relied upon by appellant, this Court held that admission in evidence of *oral* statement of the accused admitting prior arrests, which oral statements were alleged to have been made by the accused while in the custody of detectives, was error. Clearly, that case is inapposite.

Appellant's contention that the court below commented adversely on the fact that the appellant failed to testify on his own behalf, contrary to the Act of May 23, 1887, P. L. 158, 19 PS Section 631, is untenable. The portion of the charge reads: "Introduced in evidence on the part of the Commonwealth was a statement made by the defendant when he was apprehended two or three months after the occurrence, having fled the jurisdiction in the meanwhile, in which he confessed to the shooting and killing, and in which he gave his version of it. You will have to decide which version to accept, although I must point out to you that the defendant's version of that killing was not given from the witness stand, but it was included in the statement which he gave to the police. Do you believe that is an accurate statement, or do you believe, since he was charged with the crime, he was giving a statement of the facts calculated to sort of clear him somewhat? You see, he is the defendant here and you have to study his version of it in the light of his position in the case. He does not have to take the stand to testify on his own behalf if he does not want to, and the fact that he does not is not to be taken as an admission of guilt of any particular degree of crime. It was frankly stated that the question of guilt as to the fact of the deed committed is not litigated here, and the case was tried, as I followed the arguments, on the question of the degree of crime of which the defendant is guilty."

Reference to the failure of a defendant to testify on his own behalf, to constitute reversible error, must call the jury's attention to the fact that the defendant has not

testified and must reasonably lead to an inference that he would have taken the stand if not guilty: Cf. *Commonwealth v. Zukovsky,* 324 Pa. 588, 591, 188 A. 349; *Commonwealth v. Thomas,* 275 Pa. 137, 118 A. 667; *Commonwealth v. Foley,* 24 Pa. Superior Ct. 414. Appellant's rights were adequately protected by the trial judge when he said: "He does not have to take the stand to testify on his own behalf if he does not want to, and the fact that he does not is not to be taken as an admission of guilt of any particular degree of crime."

Appellant's assignments of error asserting unjustifiable criticism of counsel during argument before the jury is without merit.[1] The trial judge may, and should, confine arguments within the limitations of legitimate advocacy. Appellant's constitutional rights in this regard were not prejudiced in any way. Moreover, the trial judge in his charge later complimented counsel for appellant. *Commonwealth v. Brown,* 309 Pa. 515, 164 A. 726, *Commonwealth v. Polichinus,* 229 Pa. 311, 313, 78 A. 382, and *Commonwealth v. Wood,* 118 Pa. Superior Ct. 269, 179 A. 756, were cases in which the jury was instructed to disregard arguments of counsel and be guided by the evidence alone.

Appellant's basic contention relates to that portion of the charge regarding the inference of the specific intent to kill from the use of a deadly weapon upon a vital part of the body. The charge complained of comes within the orbit of cases setting forth the rule that the fatal use of a deadly weapon upon a vital part of another's body when established as a fact, warrants an inference

---

[1] "Every person is presumed to be of sound mind. There is no evidence in this case that this defendant was drunk in any legal sense of the term, or in any sense. That is why I considered it somewhat improper for counsel for the defendant in arguing this case to you to stand there at the bar and simulate a drunken person by staggering and all the other actions that he indulged in, in order to suggest to you that perhaps his client was in the condition that he described by his own actions. There is no evidence of that here at all and it is always improper to bring before the jury by way of argument anything that is not in evidence": N.T. page 87-a.

that the act was done with a specific intent to take life. Cf. *Commonwealth v. Samuel Jones,* 355 Pa. 522, 526, 50 A. 2d 317; *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398; *Commonwealth v. Iacobino,* 319 Pa. 65, 178 A. 823; *Commonwealth v. Troup,* 302 Pa. 246, 253, 153 A. 337; *Commonwealth v. Green,* 294 Pa. 573, 144 A. 743. In *Commonwealth v. Kelly,* 333 Pa. 280, 289, 4 A. 2d 805, this Court said: "The fatal use of a deadly weapon against a vital part of another's body when established as a fact warrants an inference that the act was done with a specific intent to take life and so justifies a verdict of guilty of murder in the first degree." The precise language of the trial judge that ". . . the fact finding body, the jury, has a perfect right, I should say almost the duty, legal duty, of saying that there was an intent to take the life" cannot be approved. Standing alone, it is objectionable. Cf. *Commonwealth v. Chapler,* 228 Pa. 630, 77 A. 1013. When, however, it is read and considered in its context, it cannot be held to be prejudicial error. "Isolated excerpts torn from the heart of the charge cannot be considered apart from the context . . . the parts objected to do not form a proper basis for reversal": *Commonwealth v. Schurtz,* 337 Pa. 405, 411, 10 A. 2d 378; *Commonwealth v. Malone,* 354 Pa. 180, 184, 47 A. 2d 445. Cf. *Commonwealth v. Barnak,* 357 Pa. 391, 406. Especially is this true where, as here, the trial judge throughout his charge instructed the jury that they and they alone were to determine or fix the degree of guilt of the defendant. At the end of his charge, in refusing appellant's request that he instruct the jury that under all the evidence the verdict of the jury could not be guilty of first degree murder, the court said: "The verdict can be murder of the first degree, in the opinion of the Court, but it is entirely for the jury to say whether it shall be or not."

What was recently said in the concurring opinion in *Commonwealth v. Barnak,* supra, 423, is appropriate here:

"Challenged statements must be viewed not as isolated utterances to a jury, but with due regard to their probable effect when considered with explanatory remarks which preceded or followed the statements in question . . . Where . . . examination of the entire record clearly supports the finding of appellant's guilt beyond any reasonable doubt, and where a fair and impartial trial has been had, and the conclusion inescapable that the error did not influence the jury against the accused, the true administration of justice cannot be negatived by technical error which has not deprived an accused of his legal right to a fair trial."

Judgment and sentence affirmed.